UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ELBRIDGE H. STUART, III,

        Plaintiff,

   v.

CAMP KOREY,

        Defendant.

Case No. C16-1815 RSM

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO STRIKE

## I.    INTRODUCTION

This matter comes before the Court on Defendant Camp Korey's Motion for Summary Judgment (Dkt. #10), Plaintiff Elbridge H. Stuart, III's Motion to Strike (Dkt. #13), and Mr. Stuart's Cross Motion for Summary Judgment (Dkt. #18). For the reasons below, the Court DENIES all three Motions.

## II.    BACKGROUND

Plaintiff Elbridge H. Stuart III is a director of the Elbridge and Debra Stuart Family Foundation and the manager of SCF Holdings, LLC ("SCF"), previously known as Carnation Farms, LLC, which is a subsidiary of the Foundation. Dkt. #17 at 1. Mr. Stuart is the great-grandson of Elbridge Stuart, who founded the Carnation Milk Company in 1899. *Id.* at 2. In 1985, Carnation was acquired by the Nestle Corporation. *Id.* This sale included the original

Carnations Farm Site in Carnation, Washington. *Id.* In 2008, Nestle sold Carnation Farms to Defendant Camp Korey, a nonprofit organization that provides camping facilities for children with serious illnesses. *Id.* Mr. Stuart served on the board of directors for Camp Korey starting in 2007. *Id.* at 2.

On December 21, 2009, SCF purchased Carnation Farms from Camp Korey and leased the property back to Camp Korey. *Id.* at 4. At this time, Mr. Stuart was still on the board of directors for Camp Korey.

In April of 2016, Mr. Stuart resigned from the board and sent a notice of default to Camp Korey alleging, among other things, that Camp Korey had not performed certain maintenance and improvement projects ostensibly required by the lease. Dkts. #12 at 2; #12-1. This notice was sent "[o]n behalf of Carnation Farms LLC" and signed by Mr. Stuart. Dkt. #12-1. Eventually, counsel for Camp Korey and counsel representing SCF negotiated an Agreement to Mediate to Resolve Differences ("Agreement") on May 27, 2016. Dkt. #12-5. The Agreement refers to disputes between "the parties" but does not define that term or list the parties to the Agreement. *Id.* The Agreement states "[a]ny disputes between the parties that are not resolved by September 30, 2016 shall be resolved by binding arbitration, by an arbitrator agreed to by counsel for the parties." *Id.* The Agreement has only two signature lines, and is signed by Chris McReynolds for Camp Korey and Mr. Stuart for Carnation Farms LLC. *Id.*

Mediation ultimately occurred with Mr. Stuart in attendance. The engagement letter for the mediation listed the parties as "Camp Korey/Carnation Farms, LLC/Elbridge Stuart." Dkt. #12-8. Mr. Stuart's counsel submitted a mediation brief "on behalf of the Elbridge and Debra Stuart Family Foundation, its subsidiary, Carnation Farms LLC, and Elbridge ('Bridge')

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION TO STRIKE - 2

Stuart." Dkt. #12-9 at 1. This letter states "[t]he parties will arbitrate any remaining claims if they cannot be resolved at mediation," and appears to list Mr. Stuart as a party under a section titled "The Parties." *Id*. at 3. Later, the letter reiterates "[t]he parties have agreed to arbitrate all claims if they cannot be resolved at mediation." *Id*. at 9.

The parties mediated but were unsuccessful and the dispute was scheduled for binding arbitration. On October 4, 2016, the arbitrator, Judge Kallas (ret.), issued a Report of Preliminary Hearing and Case Scheduling Order listing "Elbridge H. Stuart/Carnation Farms, LLC" as the Plaintiffs. Dkt. #11-5. Although the arbitration included claims between Carnation Farms LLC and Camp Korey, Camp Korey also brought cross-claims against Mr. Stuart personally.

In this action, Mr. Stuart asserts that he was not subject to the Agreement, cannot be bound to arbitration, and seeks declaratory judgment. Dkt. #1. The parties have agreed to stay the arbitration until this action is resolved.

Camp Korey now moves for summary judgment, arguing that extrinsic evidence establishes Mr. Stuart as a party to the Agreement, that he should be bound to the Agreement by equitable estoppel, and that he should be bound through agency theory. Dkt. #10. Mr. Stuart also moves for summary judgment based on the face of the Agreement and certain extrinsic evidence. Dkt. #18.

### III. DISCUSSION

**A. Plaintiff's Motion to Strike**

Mr. Stuart brought this action for the Court to determine whether his participation in a mediation binds him personally to the Agreement and its term requiring mandatory arbitration. In its Answer, Camp Korey alleges certain counterclaims. Dkt. #7. In doing so, Camp Korey

relies on language from a mediation brief submitted "on behalf of the Elbridge and Debra Stuart Family Foundation, its subsidiary, Carnation Farms LLC (collectively referred to as the 'Stuart Foundation'), and Elbridge ('Bridge') Stuart." *Id.* at ¶ 5.11. Camp Korey asserts that Mr. Stuart's counsel "made clear that any resolution in the mediation necessarily would have to include the claims Camp Korey was asserting against Mr. Stuart individually." *Id.* at ¶ 5.12. Mr. Stuart now moves to strike these paragraphs under the mediation privilege and the terms of the mediation. Dkt. #13. The Court has reviewed Mr. Stuart's Motion to Strike Paragraphs 5.11 and 5.12 from Camp Korey's Answer pursuant to Rule 12(f) and determined that Mr. Stuart cannot rely on the mediation privilege or the terms of the mediation to strike these paragraphs because he has necessarily opened the door to such communications by bringing this action. *See Bradfield v. Mid-Continent Cas. Co.*, 15 F. Supp. 3d 1253, 1256-57 (M.D. Fla. 2014) (discussing mediation privilege); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). The Court is also convinced that Mr. Stuart has waived the mediation privilege with regard to these specific paragraphs through his own declaration stating he "would never have agreed to a settlement in which SCF compromised its claims against Camp Korey, if Camp Korey retained the right to sue [him] personally." Dkt. #17 at 7. In any event, the Court agrees with Camp Korey that the information submitted to the Court does not contain the substance of the mediation negotiations.

**B. Legal Standard for Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at

248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

**C. The Agreement and the Intent of the Parties**

Camp Korey urges the Court to consider extrinsic evidence to determine the intent of the possible parties to the Agreement. Such evidence may be considered under Washington law "as an aid in ascertaining the parties' intent." *Berg v. Hudesman*, 115 Wn.2d 657, 667–69, 801 P.2d 222 (1990). This evidence can include subsequent actions of the contracting parties. *Id*. at 668. Under Washington law, contract interpretation is a question of fact when a court relies on inferences drawn from extrinsic evidence, but is a question of law when "(1) the interpretation does not depend on the use of extrinsic evidence or (2) only one reasonable inference can be drawn from the extrinsic evidence." *Kelley v. Tonda*, 2017 Wash. App.

LEXIS 734, *8 (Wash. Ct. App. Mar. 27, 2017) (citing *Spectrum Glass Co. v. Pub. Util. Dist. No. 1 of Snohomish County*, 129 Wn. App. 303, 311, 119 P.3d 854 (2005)). Summary judgment is inappropriate when more than one reasonable inference can be drawn from the extrinsic evidence. *Id.* (citing *Kries v. WA-SPOK Primary Care, LLC*, 190 Wn. App. 98, 120, 362 P.3d 974 (2015)).

The Court finds that extrinsic evidence is necessary to determine the intent of the parties in this case because the term "parties" is not defined in the Agreement and the signature blocks are ambiguous. The Court has reviewed the extrinsic evidence cited by both parties and cannot conclude as a matter of law that Mr. Stuart was or was not a party to the Agreement. *See, e.g.,* Dkts. #10 at 9-10 and #18 at 14-16. A factfinder could draw reasonable inferences in favor of Mr. Stuart's or Camp Korey's respective positions on this issue. Accordingly, summary judgment will not be granted for either party on this issue.

**D. Equitable Estoppel**

"Equitable estoppel is a limited exception to the general rule that parties cannot be required to submit to a contract to which they have not agreed: 'Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *E.W. Bank v. Bingham*, 992 F. Supp. 2d 1130, 1133 (W.D. Wash. 2014) (quoting *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009)). A nonsignatory "may be held to an arbitration clause where the nonsignatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *Id.*; *see also T-Mobile USA, Inc. v. Montijo*, No. C12-1317RSM, 2012 WL 6194204, at *1 (W.D. Wash. Dec. 11, 2012) (explaining equitable estoppel exception). "Washington courts, like federal courts, have recognized that both equitable estoppel and

'normal contract and agency principles' permit signatories to arbitration agreements to compel arbitration against non-signatories in some circumstances." *Alaska Protein Recovery, LLC v. Puretek Corp.*, No. C13-1429, 2014 WL 2011235, at *5 (W.D. Wash. May 16, 2014) (quoting *McClure v. Davis Wright Tremaine*, 77 Wash. App. 312, 315, 890 P.2d 466 (1995)).

Camp Korey argues that Carnation Farms LLC and Mr. Stuart were only willing to reach a settlement in mediation if it included a release for Mr. Stuart in his personal capacity. Dkt. #10 at 11. Camp Korey further argues that it entered the Agreement with the understanding that it included Mr. Stuart, and that Mr. Stuart "lull[ed] Camp Korey into reliance on that understanding, such that Camp Korey waited to bring claims against him until after September 30 and did so in the context of the arbitration." Dkt. #10 at 12. Camp Korey argues that "[i]f he had not hidden behind the Agreement in all of his actions up until Camp Korey filed its cross-claims against him in arbitration, Camp Korey could have acted sooner and potentially saved itself significant litigation costs or altered the equities in its favor for settlement purposes." *Id*.

In Response, Mr. Stuart argues that equitable estoppel of third parties to arbitration agreements should be "narrowly confined." Dkt. #15 at 16 (quoting *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). Mr. Stuart argues that he has not "knowingly exploited" the Agreement because he has not attempted to enforce the terms of the Agreement. *Id*. at 17. Mr. Stuart argues that he personally received no benefit from the Agreement. *Id.* at 18. He argues that even if he forced Camp Korey to mediate claims against him personally, he did not benefit (presumably because the mediation was unsuccessful) and that Camp Korey's reliance on his apparent participation in the mediation to delay bringing claims was Camp Korey's "own doing." *Id*.

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO STRIKE - 7

On Reply, Camp Korey argues that Mr. Stuart knowingly exploited the Agreement when "Mr. Stuart used his position as manager of SCF and his own 'voluntary' participation to prevent any successful resolution of the claims between Camp Korey and SCF, short of arbitration, unless he obtained a full release of Camp Korey's claims against him in his personal capacity." Dkt. #21 at 8 (citing Dkt. #10 at 11).

The Court finds that Mr. Stuart is clearly not attempting to enforce the Agreement while avoiding the mandatory arbitration clause. To the contrary, he is attempting to avoid being a party to the Agreement altogether. The record does not support a finding that Mr. Stuart personally received a benefit from the Agreement, as mediation was unsuccessful. The Court agrees with Mr. Stuart that Camp Korey's alleged reliance to delay further legal action was its own doing, and that such reliance does not rise to the level of exploitation required to overcome the general rule that parties cannot be required to submit to a contract to which they have not agreed. *See E.W. Bank, supra*. Accordingly, this claim fails as a matter of law.

**E. Agency Theory**

Camp Korey argues under Washington law "nonsignatory agents should be compelled to arbitrate if the claims involving them were intertwined with the claims involving a signatory principal." Dkt. #10 at 13 (citing *Romney v. Franciscan Medical Grp.*, 186 Wash. App. 728, 747-48, 349 P.3d 32 (2015)). Camp Korey argues that "Mr. Stuart is indisputably an agent of [SCF]," that Mr. Stuart signed the Agreement on SCF's behalf, and that "it is undisputed that the claims involving Mr. Stuart and [SCF] are fundamentally intertwined." *Id*. at 14.

In Response, Mr. Stuart argues this theory only applies "when a signatory has brought claims against non-signatory agents and the agents then seek to invoke the arbitration clause against the signatory," and that "[t]he situation is materially different when… a signatory seeks

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION TO STRIKE - 8

to invoke an arbitration clause against a non-signatory." Dkt. #15 at 19 (quoting *Legacy Wireless Servs. V. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1054 (D. Or. 2004)). Mr. Stuart argues that he has never agreed that the disputes between Camp Korey, SCF, and Mr. Stuart are "intertwined," and presents argument for why the claims against him personally are distinct from the claims between SCF and Camp Korey. Dkt. #15 at 20-21. Mr. Stuart argues that the standard in *Romney* is actually that the claims are "inherently inseparable," and that this standard has not been met. *Id*. at 20 (citing *Romney*, *supra*).

On Reply, Camp Korey points out that *Legacy* is an out-of-state case and Washington law controls this issue. Dkt. #21 at 12.

The Court agrees that *Legacy,* an Oregon case, is not controlling here. On the other hand, the Court finds that the sole source for Camp Korey's argument, *Romney*, does not support Camp Korey's position. *Romney* states "[w]here claims are based on the same set of facts and inherently inseparable, the court may order arbitration of claims against the party even if that party is not a party to the arbitration agreement," citing *Townsend v. Quadrant Corp.*, 153 Wn. App. 870, 889, 224 P.3d 818 (2009), *aff'd on other grounds*, 173 Wn.2d 451, 268 P.3d 917 (2012). That broad statement is necessarily limited by the citation to *Townsend*. In *Townsend*, plaintiff homeowners purchased houses from defendant the Quadrant Corporation and brought claims against Quadrant, its parent company Weyerhaeuser Real Estate Company ("WRECO"), and *its* parent company Weyerhaeuser Company. 153 Wn. App. 875-76. The purchase and sale agreement used in all the transactions contained a broad mandatory arbitration provision. *Id.* at 875. The state Court of Appeals found that the two nonsignatory parent companies WRECO and Weyerhaeuser could enforce the arbitration clause for claims brought against them by the signatory homeowners who also had claims against the

signatory Quadrant because of "ordinary principles of contract and agency" and because the charges against the parents and subsidiary were based on the same facts and were "inherently inseparable." *Id.* at 889. Thus *Romney* and *Townsend* do not on their own permit the Court to allow a signatory to invoke an arbitration clause against a nonsignatory. The Court does not believe the instant situation, where Mr. Stuart was signing on behalf of Carnation Farms LLC, is sufficiently similar to an employer binding its employees to arbitration or a subsidiary binding a parent company to arbitration. Accordingly, the Court finds that Camp Korey has failed to meet its burden on this claim and will deny summary judgment.

### IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that:

1) Defendant Camp Korey's Motion for Summary Judgment (Dkt. #10) is DENIED.

2) Plaintiff Stuart's Motion to Strike (Dkt. #13) is DENIED.

3) Plaintiff Stuart's Cross Motion for Summary Judgment (Dkt. #18) is DENIED.

DATED this 26th day of April 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE